UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Travis King,
    Claimant

    v.                                    Case No. 20-cv-1139-SM
                                            Opinion No. 2023 DNH 014

Kilolo Kijakazi,
Acting Commissioner of
Social Security,
    Defendant

**O R D E R**

Following remand of this Social Security Disability case, claimant, Travis King, was awarded past-due benefits in the amount of $95,734.10. Invoking her contingent fee agreement with King, as well as the provisions of 42 U.S.C. § 406(b), King's counsel seeks an award of attorney's fees in the amount of $23,000 (representing slightly less than twenty-five percent of King's recovered benefits). For the reasons discussed, that motion is granted in part and denied in part.

**Background**

More than six years ago, King filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that he was disabled and had been unable to work since

June 23, 2015, by reason of degenerative disc disease, PTSD, and recent surgeries on his rotator cuff and right knee.  He was 34 years old at the time.  The agency initially denied King's applications and he requested a hearing before an Administrative Law Judge ("ALJ").  By Order dated March 26, 2018, the ALJ also concluded that King was not disabled, as defined in the Social Security Act.  King appealed and the Appeals Council remanded the matter for a new hearing, which was held before a different ALJ.  That ALJ, too, concluded that King was not disabled within the meaning of the Act and the Appeals Council subsequently affirmed that decision.  King was represented by various attorneys at the law firm of Jackson & MacNichol through all stages of the administrative process.

On October 27, 2020, King retained Alexandra M. Jackson, Esq., also of Jackson & MacNichol, to appeal the administrative denial of disability benefits to this court.  He signed a "Contingent Fee Agreement" with that firm.  Pursuant to that agreement, King agreed to "pay a fee equal to twenty five percent (25%) of the total amount of any past benefits awarded to Client."  King also acknowledged that absent such an agreement, "the services of the attorney . . . would ordinarily be billed to the client by the hour at a rate in excess of $350 per hour."  Approximately one month later, Attorney Jackson

2

filed a two-page, form complaint alleging that King had been improperly denied the benefits for which he had applied. Almost immediately (and before Attorney Jackson had filed any substantive legal memoranda or argument in this court), the Acting Commissioner recognized that the ALJ had committed plain legal error (by refusing to consider relevant and properly introduced evidence) and promptly agreed to a remand of the matter back to the Social Security Administration. In total, Attorney Jackson spent 4.1 hours on legal work related to King's appeal to this court.[1]

On remand, a third hearing was held before a different ALJ and King was awarded $95,734.10 in past due benefits. Counsel now seeks $23,000 in fees, which represents slightly less than twenty-five percent (25%) of that amount. If granted in full, such a fee award would be equivalent to a "de facto hourly rate" of roughly $5,600 for work performed before this court. King has not filed any objection to counsel's fee request. And, because the Commissioner has no direct financial stake in the

---

[1] Counsel is only seeking fees for representation provided in this forum. See 42 U.S.C. § 406(b). Compensation for work performed at the administrative level is determined by the Commissioner and subject to a statutory cap. See 42 U.S.C. § 406(a). See generally Gisbrecht v. Barnhart, 535 U.S. 789, 794 (2002); Pais v. Kijakazi, 52 F.4th 486, 490 (1st Cir. 2022). Effective November 30, 2022, that cap was increased to $7,200. See 87 Fed. Reg. 39157.

resolution of counsel's request for fees, she does not formally oppose that petition. Nevertheless, the Commissioner has filed a "response" to counsel's application, to assist the court in determining a "reasonable" award. The Commissioner recommends a fee award of $4,000.

Parenthetically, the court notes that counsel apparently received no compensation pursuant to 42 U.S.C. § 406(a) for all the legal work performed on claimant's behalf over the course of roughly six years at the administrative level – work that in the end proved successful, despite serial defeat along the way. See Petitioner's Reply Brief (document no. 16) at 1-2 ("[T]he] ALJ rejected counsel's fee agreement so that no fee had been awarded at the administrative level."). It appears the Commissioner rejected counsel's fee agreement with Mr. King because, although that agreement is plainly between King and the law firm of Jackson & MacNichol, not all attorneys who worked on Mr. King's case signed that agreement. See Hearings, Appeals, and Litigation Law Manual (HALLEX), I-1-2-12, Fee Agreements – Evaluation Policy. See also Form SSA-1693 ("You and your representative must sign and date this form. If you are appointing multiple representatives, all of your representatives who intend to seek a fee for services provided on your claim must sign on a single fee agreement for the fee agreement to be

4

approved."). While not directly relevant to the pending fee petition (since only work before this court may be compensated under § 406(b)), that fact might well explain why Mr. King has no objection to counsel receiving the full $23,000 in fees she seeks: he, unlike the court, is unconstrained by the limits of § 406(b) and may look at the global body of work performed by the attorneys at Jackson & MacNichol over the years – including three administrative hearings before three different ALJs, two appeals to the Appeals Council, and, of course, the successful appeal to this court.

## Discussion

The portion of the Social Security Act governing counsel's request for attorney's fees provides, in relevant part, that:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment.

42 U.S.C. § 406(b)(1)(A) (emphasis supplied). In interpreting the meaning of that provision, the Supreme Court concluded that section "406(b) does not displace contingent-fee agreements within the statutory ceiling; instead, § 406(b) instructs courts

5

to review for reasonableness fees yielded by those agreements." Gisbrecht v. Barnhart, 535 U.S. 789, 808-09 (2002).  If the benefits awarded to the claimant are substantial in comparison to the amount of time counsel spent on the case, or if counsel was responsible for a delay in resolving claimant's case, a downward adjustment is appropriate to avoid giving counsel a windfall.  Id. at 808.

Although the Supreme Court's guidance in this area is vague, the Court has made at least one point clear: primary reliance on the familiar "lodestar" method for calculating a "reasonable" fee award is not appropriate when considering a fee application under § 406(b).

> [T]he lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation.  Fees shifted to the losing party, however, are not at issue here.  Unlike 42 U.S.C. § 1988 and EAJA, 42 U.S.C. § 406(b) does not authorize the prevailing party to recover fees from the losing party.  Section 406(b) is of another genre: It authorizes fees payable from the successful party's recovery.

Gisbrecht, 535 U.S. at 802 (citations omitted).  See also Id. at 806 ("[W]e again emphasize, the lodestar method was designed to govern imposition of fees on the losing party.").  Nevertheless, the Court did acknowledge that the lodestar method of

6

calculating fees may be a useful factor for courts to consider in making a "reasonableness" determination.

> If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order. In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyers normal hourly billing charge for noncontingent-fee cases.

Id. at 808 (citations omitted). That guidance from the Court has left lower courts uncertain about the extent, if any, to which the lodestar method should influence a calculation of fees under § 406(b) when there is a valid contingency fee agreement.

In any event, the starting point in the analysis is plain: a court must begin with a review of the parties' contingent-fee agreement and determine whether strict application of the agreement's terms would yield a "reasonable" fee or a "windfall." Gisbrecht, 535 U.S. at 808. Courts making such determinations in similar cases have attempted to balance numerous factors, including:

> the benefits received by the claimant in comparison to the amount of time counsel spent working on the case;
>
> whether counsel was responsible for any delay for which she should not be compensated;

7

>   the fees awarded in similar cases;
>
>   the character of the representation and the results obtained;
>
>   the complexity of the case;
>
>   the risk assumed by counsel in agreeing to represent the claimant based on an assessment of the strength of the claimant's case and the likelihood that no benefits would be awarded to the claimant;
>
>   whether counsel was aware of that risk at the time she signed the contingent fee agreement with the claimant;
>
>   the knowledge, experience, training, and expertise counsel brought to bear on the case;
>
>   the claimant's satisfaction with counsel's representation and whether there is any indication that the claimant objects to the requested fee award;
>
>   the "de facto hourly rate" presented by counsel's fee request; and, finally,
>
>   the fee award that would result if the court were to apply the "lodestar" method of calculation.

See generally Gisbrecht, supra. See also Jeter v. Astrue, 622 F.3d 371, 376 (5th Cir. 2010); Fields v. Kijakazi, 24 F.4th 845, 853-56 (2d Cir. 2022).

Of course, courts must also be mindful that, to encourage counsel to represent social security claimants who might otherwise be unable to afford their services, contingent fee awards must be sufficiently generous to allow counsel in prevailing cases to cover otherwise unrecoverable costs incurred

8

while representing claimant's in unsuccessful cases.  See, e.g., Ezekiel v. Astrue, 853 F. Supp. 2d 177, 179 (D. Me. 2012) ("[T]he rationale of contingent fee agreements is that the lawyer will be paid nothing in the cases he/she loses.  Necessarily, therefore, the lawyer must generate significantly more than the lodestar in the cases he/she wins, in order to protect the lawyer's income as well as the overhead (rent, heat, light, insurance, staff, supplies, computers, etc.) that are required regardless, win or lose."); Fields, 24 F.4th at 849 ("This case and cases like it are about getting parties who are disabled what they are owed while encouraging truly good lawyers to take on their cases.  The question before us involves the role of contingency fees in achieving these goals.  A contingency fee charged in any given winning case is likely to be high in relation to the hours actually spent on the case by the lawyer.  But, without contingency fees, people in need of good lawyers would often not be able to hire them.").

As noted above, counsel seeks reimbursement for legal work before this court that, while successful and unarguably critical to claimant's recovery, required only 4.1 hours of counsel's time.  If the court were to award counsel the full $23,000 called for by the contingent fee agreement (at a de facto hourly rate in excess of $5,600), that would constitute compensation at

9

an hourly rate that other courts in this circuit have thought to be a windfall. See, e.g., Nichols v. Colvin, 2016 WL 5374119, 2016 DNH 173 (D.N.H. Sept. 26, 2016); Enos v. Saul, 2020 WL 6082127, No. 19-10023-RGS (D. Mass Oct. 15, 2020); Ezekiel, 853 F. Supp 2d at 179-80. See generally Gisbrecht, 535 U.S. at 808 ("If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order."); Fields, 24 F.4th at 856 ("A windfall is more likely to be present in a case where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery. That kind of unearned advantage is what the windfall concern really is about.").

Consequently, some reduction is necessary to ensure that a windfall is avoided and the fee award is reasonable. Importantly, however, a "reasonable" fee in circumstances such as these likely falls somewhere along a fairly long continuum; it is not a point. Given that, it would seem that the court's responsibility is to begin with the amount sought by counsel under her contingent fee agreement and work downward, in an effort to discern the highest fee award that is sensible, justifiable, and proper under the circumstances – that is to say, "reasonable." After all, Mr. King has agreed to pay

10

Attorney Jackson the full $23,000 in fees requested. And this court's role is simply to act as a check against inappropriately high fee awards, windfalls, and unjust results – that is, to "contain" the product of contingent fee agreements within some reasonable limits. See Gisbrecht, 535 U.S. at 805. See generally Crawford v. Astrue, 586 F.3d 1142, 1151 (9th Cir. 2009) ("[T]he district courts in these cases started with the lodestar calculation and then adjusted upward to account for the contingent nature of the representation. This is contrary to the Supreme Court's clear directive that the district court must first look to the fee agreement and then adjust downward if the attorney provided substandard representation or delayed the case, or if the requested fee would result in a windfall."); Ezekiel, 853 F. Supp. 2d at 179 ("As Gisbrecht, Crawford, and Jeter emphasize, however, the lodestar amount (hourly rates times hours) is not the starting point.") (emphasis in original). See also Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990) ("[S]ince there is no shifting of fees under § 406(b), courts need not be Solomon-like arbiters of 'reasonableness' between the opposing interests of prevailing plaintiffs and losing defendants. Rather, because a successful social security claimant evaluates and pays his own attorney, a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case; and

11

the best indicator of the 'reasonableness' of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations.").

Turning to the facts in this case, it is plain that, on the one hand, counsel assumed little risk when she agreed to represent King in this court – the error made by the ALJ, while devastating to King, was an obvious one (at least to Attorney Jackson who had successfully litigated that very error before). See Kelly v. Saul, 2019 WL 3492449, 2019 DNH 120 (D.N.H. Aug. 1, 2019). And, of course, obtaining the order of remand required comparatively little time or effort on her part because once counsel for the Commissioner looked at the case, the Commissioner promptly agreed to a remand.

But, on the other hand, counsel should not be penalized simply because her experience and expertise in this field allowed her to quickly recognize the ALJ's error and the value of King's case. Nor should it be overlooked that her years of experience and expertise allowed her to quickly identify the

12

ALJ's error and call it to the attention of the Appeals Council.[2] A practitioner of less experience or expertise might well have turned the case down altogether, or taken significantly longer to arrive at the same point. See generally Jeter, 622 F.3d at 380-81 ("[W]e do not read Gisbrecht's 'windfall' as support for the proposition that experienced, competent counsel should be punished for accomplishing an arduous task in a shorter span of time than less-experienced, less-aggressive counsel.").

Having considered and weighed each of the relevant factors, the court concludes that a fee award of $12,000 (roughly 12.5 percent (12.5%) of Mr. King's past-due benefits) strikes an appropriate balance and falls comfortably within the description of a "reasonable" fee under the circumstances. It avoids granting counsel a windfall for the effective but not terribly time-intensive representation here, yet it recognizes not only the extensive experience and heightened expertise she brought to bear in this case, but also the excellent results obtained. It

---

[2] Despite having been alerted to the ALJ's plain error, see Admin. Rec. at 358-59, the Appeals Council inexplicably failed to recognize or acknowledge it and, instead, simply denied the appeal, id. at 1. Nevertheless, counsel's brief to the Appeals Council was not entirely in vain – it alerted the Commissioner's legal counsel to the ALJ's plain error. That, in turn, prompted the Commissioner to concede that a remand order from this court was appropriate, thereby reviving what was then a repeatedly-denied benefits claim.

is also sufficiently generous to encourage her and other qualified attorneys to continue to represent social security claimants on a contingent-fee basis – claimants who might otherwise be unable to secure the assistance of experienced and capable counsel.  Finally, given the facts of record, it strikes the court as being consistent with § 406(b)'s mandate that an award of attorney's fees must be "reasonable" under all of the relevant circumstances.  When counsel filed the appeal in this court, the claimant had been denied any benefits by the Commissioner.  The Appeals Council provided no relief, notwithstanding the ALJ's plain error (which was recognized and acknowledged only after claimant's counsel sought relief in this court).  Claimant should not have been required to file the case to obtain the relief sought, but by filing the successful appeal to this court, counsel revived the denied claim and opened the "gateway" to obtaining a significant benefit for her client.  Her victory in this forum was both essential and extremely valuable to Mr. King.

As an aside, the court notes that had the administrative process worked as indented, Mr. King's claims would have been fully resolved in the administrative forum and the appeal filed in this court would never have been necessary: the ALJ's error was plain and the Appeals Council should have corrected that

14

error.  If that had been the case (and, of course, had the Commissioner not rejected counsel's fee agreement with Mr. King on what seems to have been something of a technicality), counsel likely would have received $7,200 in compensation for the years of administrative work her law firm had done on claimant's behalf.  Viewed from that perspective, it is difficult to imagine that counsel will complain about the court's fee award for work performed in this forum – despite being roughly half of what she seeks.  Nor can claimant complain given that the amount awarded is substantially less than he agreed to pay, and a fee award much lower would constitute an unintended windfall to him at counsel's expense.

## Conclusion

This court's calculation of "reasonableness" is, of course, unavoidably subjective in many respects.  Sensible minds can certainly disagree on what a "reasonable" fee in these circumstances might be.  But, as Judge Hornby has observed, "There is no mathematical answer to guide me or the lawyers . . . I acknowledge the regrettable imprecision of this analysis, but the caselaw leaves me no alternative."  Ezekiel, 853 F. Supp 2d at 180-81.

For the foregoing reasons, claimant's Motion for an Award of § 406(b) Fees (**document no. 13**) is granted in part, and denied in part. It is granted to the extent counsel is entitled to **$12,000.00** from Mr. King's award of past-due benefits as a reasonable fee for her representation of him in this court.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 6, 2023

cc: Counsel of Record